ROGER ZISSU Good morning, Your Honors. I'm here with my partner, David Donahue, representing Stephen Schlesinger, Inc., on this appeal. This is an appeal from a grant of summary judgment dismissing petitions to cancel and oppositions on the ground of collateral estoppel on the basis of a prior district court decision in the Central District of California. This morning I would like to focus on the third requirement for the application of the collateral estoppel defense, namely that the allegedly addressed and adjudged point or issue was necessary and essential to the determination by the district court. Now there's a basic rule in this court that an opposer is not barred from an opposition or a petition to There's also a basic rule in this court that the application of collateral estoppel is a drastic remedy and that it should be approached with caution in all cases by the Patent and Trademark Office. There's a 1983 contract. It talks about various further rights in the works of the Schlesinger group. Does that include trademarks? No, it did not, and I'll tell you why. I first have to preface this. We're going into the merits now, and that's pervaded the opposition to this appeal, and it's the fallacy of the Trademark Board. The only issue is whether the four requirements are met under the collateral estoppel doctrine. You've asked the question, and I answer you, no. But it's in the merits, and it's really for another day if we can survive collateral estoppel in this case, because there's a great deal of evidence of it. But the question of the intent of the parties in the 1983 agreement is a question of fact, and what's looked at in terms of fact is of course the language in the agreement, but there's a mountain of other evidence which we were not able to present and which were precluded from presenting at this point on that question. You were not able to present where? Before the TTAB or before? We were not able to get the board to consider that evidence because we were collaterally estopped from a trial. Right, but you did have the opportunity to present evidence before the district court. We did. And you didn't appeal the district court's determination. No, we did not for a very good reason. There was no basis for an appeal because there was an alternative ground for that decision, independent of that point. And that ground was that our client did not retain the rights to prevent its own grantee and make them an infringer. That's the crux. This was a counterclaim for trademark infringement. And if you're suing your own grantee and you don't have sufficient rights to go after your own licensee, grantee, whatever you want to call it at this point, that's it. Everything else falls by the wayside. But during the litigation before the district court, didn't the issue of the ability of Disney to register the trademarks come up? Yes, it did. You were aware during the district court proceeding that ownership of the trademark could be an issue. First, I have to say I was not involved in that motion. We're a public council, but in any matter, or any of the other proceedings except the copyright matter. But yes, it came up and it was teed up. The issue that was teed up for decision by Judge Cooper was whether the 1983 agreement was an assignment of trademarks or a license or exclusive license of trademark rights. We say the latter. We argued the latter. You said to me a minute ago that that 1983 contract didn't include trademarks. Yes. But in previous state litigation, you'd made precisely the other argument, hadn't you, that in fact the 1983 contract did include trademarks. All of that is into the merits. It's not yours. And they are allowed to rely on the district court. The question that we did not have a full chance to litigate before the board was whether this was an assignment or a license. The district court did not address that question either. This was teed up as a crystal clear issue for the court to determine. Judge Cooper never uses the word assignment or license. Judge Cooper does say, under the clear terms of the party's agreement, SSI transferred all of its rights in the Pooh Works to Disney. I mean, how is that not a clear statement? The word transfer judicially has been held not to mean assignment, first of all. Second of all, all of those rights could have been transferred or granted in an exclusive license to Disney. On the 83 agreement, there's no mention in the agreement of trademarks. There's mention of the language assignment. There's a mention of rights. There's no mention of trademarks. There's no transfer of the goodwill associated with a trademark. There's no schedule of trademarks to that agreement. How do you get around the fact that acting as special master, former Judge Fern Smith, concluded that it was frivolous in connection with her assessment of the sanctions question to argue that there was anything other than a complete assignment and that that decision was later adopted in full by the district court? Well, with all due respect, the issue in this court and the issue below is what Judge Cooper decided, not what a third person said. Reading the opinion, any more than your views about reading that opinion are determined. But Judge Cooper adopted the special master's finding with respect to the sanctions award, did she not? She made an award under the trademark standard of what's an exceptional case. That decision has the same ambiguity in it than Judge Cooper's decision had. She could have decided it was frivolous. The license issue was completely before the court, wasn't it? It was, but the question of whether the assignment license issue was essential to the court decision is what is not clear. The decision, once Judge Cooper says, you know, you granted Disney rights to use these trademarks. They had use rights. At that point, there's no more trademark infringement. You're suing somebody who gave the rights, use rights to. Once that decision is made, anything else about the assignment versus license issue is gone. So there's no more, there's no longer a trademark infringement. You're saying that the district court was hearing a case involving scope and not the nature of the transfer. Yes, scope. Or it would be decided on the basis of scope. Yes, scope of rights was Disney an infringer. Disney had been using these rights for years. I think the question Chief Rader was asking is one that I'm interested in too. Under three, the determination of an issue necessary to the judgment of the proper city. Was the ownership of the trademark an issue whose determination was necessary in order for. The answer is clearly no. If Disney had a license, an exclusive license, or even a non-exclusive license to use those trademarks, the trademark infringement counterclaim is over. Anything beyond that as to whether the transaction was an assignment or a license is not something essential and necessary to the decision. After the 1983 agreement, what rights remained in your clients, for your clients? Well, certainly the right, for example, to a reversion of the rights granted to Disney for non-payment. That's not normal for an assignment of a mark. As I said, we're getting into the merits now. We can argue this if we're given a chance to before the board, either in a motion for summary judgment. There's evidence, for example, if we're going to go beyond this and try a case in which we've been precluded from presenting evidence. Disney referred to this as a license in its SEC files, in federal court papers. The Court of Appeal in California referred also to this transaction as a license. We have all these things. We have admissions all over the place. And so that is for the board, which would be most suitable to hearing both sides. We could lose, but we have a right to get a chance before the board, and that's all we're asking for here. As Judge O'Malley pointed out a couple of times, at several points it says the clear terms said that all rights were transferred to Disney. All rights. How does that give us any wiggle room here? Of course, there are magic words. But that's not the way the courts work. We don't talk about magic words. Can I answer your question? Yes, please do. You're throwing three at me at a time, and I really want to answer them because this is my only chance. Okay. If this were an exclusive license of trademark rights, all of the rights would have been transferred. But that doesn't make an assignment of a trademark. The hallmark of a trademark assignment is to mention marks and use the word mark, not rights. Transfer doesn't do it, judicially. It's a question of fact, ultimately. So you're quibbling with the words. What? You're quibbling with the words. I'm not quibbling. All rights doesn't mean all rights to you. It means all rights, but it doesn't make it an assignment. I mean, these are legal requirements. Do you think Disney, after all these years and being involved in this whole thing the way it is, comes into and acquires trademark rights and never mentions marks, never has a schedule attached to the license? This is not 1910. This is 1983. And there's a whole bunch of other considerations here. In California, the question of what the intent of the parties is, is determined. It's a matter of fact in a contract. And it's not only the language of the agreement. Extrinsic evidence is admissible, including Disney's admissions for years. In the reporting statements, they refer to this for years as a license. So whether my client should or should not have referred in state court litigation where they felt they weren't being fully paid for those rights, have said that they gave Disney all rights or used the word assignment, that's an issue of fact, really, as to what this all means. It really is for the board. And what you're doing to me this morning is trying the case. Our hands are tied behind our back. I can't present to you all the evidence. We've alluded to it, some of the things I've mentioned in our brief. But we're getting ahead. Was it necessary and essential to Judge Cooper's decision to say the trademark infringement case is over? And it clearly, as a matter of logic, was not. Once Disney is not an infringer, the case is over. What about the fact that the district court specifically noted in the analysis that there had been some 15 trademarks that Disney had applied for and granted with no objection? Isn't that an indication that she thought she was deciding that trademark right? That would be a good point for my kind opposition to make when we get to the merits of this case. But there's an answer to it. This motion is not on the basis of latches or a time bar for failure to object. This is a Rule 56 motion only on the basis of collateral estoppel. We weren't presented with these arguments as the basis for this motion. Disney has slid into this improperly throughout these proceedings. Do you want to save that last little bit of rebuttal time? Yes. No, I do have one other thing to add. I have to. Disney has slid repeatedly into the merits issue and made this trial and confused the court. If you look at page 20 of the court's opinion, the board's opinion, they talk about you had to decide these two issues, whether there's an infringement and whether there's an assignment. You had to decide one ahead of the other. There's no logic to that or law to support it. But Disney has not only slid into the merits all the time, they've gone on into absolute, outright falsehoods. At page 7 of their answering brief, they say that Schlesinger never asserted trademark rights and would never have filed any federal registrations. Well, somehow, this contradicts their whole position. They bought our trademarks. Now we learn we didn't have any trademarks, according to Disney. These statements are also absolutely false. In the record, our five appendix, I'm sorry, the physical compilation, I think 207 through 24, are five of Schlesinger's trademark registrations. Also, not in the record that we would present. In 1961, the registrations were obtained by Schlesinger for both Winnie the Pooh and Christopher Milne. I'll save my 20 seconds. Thank you, Mr. Zissou. Mr. Petruccelli. Good morning, Your Honors. Daniel Petruccelli with my colleague, Cassie Cito for Papkalee Disney Enterprises. To respond to the questions the court put to Mr. Zissou, not only was the issue of ownership of the trademarks before Judge Cooper and the federal action, it was the issue, it was the singular linchpin issue of the entire motion that Disney made. Why does the opinion of the district court then not say specifically, mention trademarks with respect to an assignment? The court dealt with the argument that Disney made that Schlesinger had no standing to bring a claim for infringement of trademarks because Schlesinger didn't own anything. And so, Disney's argument was very simple, and the court granted the motion based on the two grounds in Disney's argument. Argument number one, the explicit language of the operative granting instruments demonstrated that Schlesinger owned nothing. And number two, the conduct of Schlesinger demonstrated that Schlesinger owned nothing and therefore could not bring a claim for trademark infringement. That's the motion the judge granted. That's all that was before the court. There was nothing else. But the opinion is hardly a model of clarity. I mean, the court did not mention the word assignment. Well, if I could disagree with that modestly, Your Honor, the court did walk through the operative instruments and did indicate that they both provided for complete assignments of 100% of the rights. If I may, Your Honor, it starts on page 1. Excuse me. I'll use the record sites. That's page 692 of the appendix where the court characterizes Disney's two grounds in its motion. It says SSI granted to Disney all of the rights it had in the Pooh characters and retained no rights which Disney could infer. But that's a question, or rather that goes towards infringement. What the court is addressing there is our argument, and if you go back to our motion that the court doesn't address the scope of the agreement? No, the court is talking about our argument, which was the first argument we made in our brief, which is at 1366 of the appendix, that Schlesinger had no rights and had no standing. It couldn't bring a claim for infringement. We weren't talking about the scope. We were talking about the threshold question of whether Schlesinger even had any ownership rights in the first instance. That was the entirety of our discussion. Okay. Under the 1983 agreement, there's an expiration and a breach clause that says that all rights will revert back to Schlesinger upon the breach by Disney or upon the expiration of the contract, the termination of the agreement. Now, if that's the case, if there's been a total assignment of all rights, how can there be a reversion of any rights to Schlesinger? The termination clause, as I understand it, was there to protect Schlesinger in the event that there was a breach by Disney, a material breach, that would give grounds for Schlesinger to rescind or terminate the transaction. That's because your payments were ongoing. Correct, and that was the position that Schlesinger asserted. Just bear with me. Now, so Schlesinger still had some sort of possessory right in whatever was assigned, given the fact that whatever it had signed could revert back to it upon the breach or the termination by Disney. If Disney had stopped paying on the agreement, then all rights would have reverted back to Schlesinger. I don't know that I would call it a possessory right, but it certainly had… What would you call it? Was it a legal right? A contractual right for payment of money. Is that similar to my leasing a car, and I lease it for 10 years, and at year six the lease holder stops paying and I get to get the car back? I don't think it would automatically follow. Well, it's not a lease. This was an outright assignment, and I'd have to go back and carefully examine the issue of whether any material breach would trigger a diversion. In my experience, when you have an assignment, it's a sale, an outright sale. And that's what the court… So it's like selling a car. You get to drive away with it. Except there's deferred compensation in this case, okay? And that's essentially what the court… That was the issue before the court, Your Honor. So it isn't the case that Schlesinger assigned all of its rights. It did retain an ownership right. No ownership rights, no, Your Honor. At most, it had a contractual right to require payment of royalties. It did not have any ownership right in the underlying property. It could not go out and sue anybody for infringement. It could not go out and act as an owner. In fact, the absence of that conduct over 50 years is what we pointed to to demonstrate that Schlesinger had no ownership interest. I mean, our motion was very simple. It didn't own anything. It didn't have a right to bring an infringement. Schlesinger came back and opposed our motion saying, no, that's wrong. We do own all the rights. We just leased or licensed them to you. And the court rejected that position. The entirety of the court's opinion is a rejection of that position. It says right on page 692 of the record, it summarizes Disney's positions and then says that the court agrees with both propositions. And then it goes on and walks through the agreements in detail. At page 693 of the appendix, it walks through the 61 agreement and says that the rights were assigned. On page 694, it walks through the 1983 agreement and says, all rights were assigned. At page 695 of the appendix, your honors, it says the court specifically concludes that Schlesinger retained no rights. No rights. Now, she's not referring there to the right to bring a lawsuit for nonpayment of money. We're talking about the ownership rights because the whole predicate of our motion was that they could make no threshold showing that they were an owner of a mark and hence had no standing to bring a trademark infringement claim. The key is, though, regardless of what was held by the district court, it is still binding. And it's binding on the TTAB, right? Absolutely. We're not really reviewing the district court's determination. We're just reviewing whether or not it decided an issue. And whether that issue is the same issue that's presented here, and Schlesinger concedes it's the same issue, and really what they're now trying to argue is that it wasn't necessary for the court to have decided that issue. But that was the issue that was presented and was the issue on which the court's decision rested. Could the district court have made its infringement finding or its non-infringement finding on the basis of a license? Let's say that they had a license to you, not a sign, assuming that. Could not the district court have decided the infringement issue on the basis of the scope of the license? It couldn't have issued this decision, but it might have issued a decision. That's not my question. It might have issued a decision saying, I find that it's a license. Then it would have had to go on to delineate the scope of the license. Then it would have had to go on to say that the uses made by Disney do or do not fall within the scope. So it would have had to lay all of that out. It never reached those other issues. It never compared the uses of Disney to the alleged scope of the license because it never found there was a license. And furthermore, your honor, I would say that it had to be found that the agreement had assigned certain rights to Disney and those rights were within the scope that led to a decision of non-infringement. The court did never reach the issue of non-infringement. The court found that they had no right or ability to bring a trademark claim because they didn't own any rights. So where in the decision does this use the word trademark in the manner that you're arguing? Well, the reason why the decision talks about rights in general is because these arguments were made collectively in our motion as to both trademark and copyrights. We were making the same argument as to both because they brought a copyright infringement claim and they brought a trademark infringement claim. We responded by saying, wait a second. Our job is to review the district court opinion. Correct. And to see if it addressed the issue. I don't see the word trademark used in the context of your argument. If you look at the record, first of all, you don't just look at the district court opinion. You look at the underlying record, including the motions that led to the opinion and that's clear under the cases. If you look at the party's briefing, the whole subject that was briefed was whether or not Schlesinger was a copyright owner and a trademark owner. They said they were. We said they were not. The court walked through the agreement. Under the third prong of the test we're applying under Montana, it's where the determination of the issue was necessary to the judgment in the prior proceeding. It doesn't say whether it was argued or included in briefs. It says judgment. Now, where do I look other than the district court's opinion for what the judgment was? You look at what the arguments were. Then you look at how the court ruled on those arguments and here the court ruled that Schlesinger had no rights. I look at the district court opinion for the judgment. Well, there's a judgment that was entered on this, but this is essentially the findings, the facts, and conclusions of law that led to the judgment. Let me make one other thing clear about your license issue, Your Honor. Had the court, it is the argument of Mr. Zissou that one could construe this opinion as being consistent with a license in which the court found that the scope was not infringed. I disagree with that because I don't think there's anything in there that suggests that at all. But there's one thing I think that's definitive on that point and that is in paragraph 137 of the counterclaim, Schlesinger sought a declaration that because it was a licensee, the title to the trademarks should be corrected and changed to take Disney out and put Schlesinger in. Had the court accepted the Schlesinger position and the view that Your Honor is quizzing me about, the court would not have and could not have denied with prejudice that claim for declaratory relief in paragraph 137. The court would have had to either deny our motion with respect to that declaration or the court would have had to defer consideration of that and say that we're going to litigate it another day or it might have denied it without prejudice. But the court denied the entirety of the trademark claim including paragraph 7's request for declaratory relief and that is definitively inconsistent with any interpretation of this ruling as a license rather than an assignment. Moreover, Your Honor, there isn't any... Let me jump out on this too. Didn't the district court twice use the phrase that SSI had retained no rights which could be infringed? Correct, and actually went beyond that and stated at page 695, significantly nowhere in its papers does SSI identify precisely what rights it believes it retained nor can any such rights be discovered by reading the contracts. So the court flatly rejects the idea that any rights, and the rights we're talking about are ownership rights on which a party has standing to bring either a trademark or copyright infringement claim, in this case both. That was the subject of the motion. That's why the motion was granted. The court goes on to say, the unambiguous nature of the contracts is strongly supported by the conduct of the parties over the nearly 50 years of their relationship. Both parties have treated the agreements as constituting a transfer from Disney, a transfer from SSI to Disney of all of SSI's interest in the Pooh characters, entitling SSI to royalties for all uses, and then goes on to point out that they never even attempted to register or perfect a trademark filing. That would not have been in the opinion had the court concluded that Schlesinger was a licensee. Is Disney still paying royalties to Schlesinger? Sure, sure, yes. The entire family has probably grown a lot. And the case for non-payment of royalties is what started all of this back in 1991, and on this issue, Your Honor, I think that you asked, or Judge O'Malley asked, Mr. Zissou, it isn't about magic words, and the cases are clear on that. It's about, and here's one case by this court called Bell International Corporation, whether a transfer constitutes a sale or license is determined by the substance of the transaction. The transfer will suffice as a sale if it appears in the agreement and the surrounding circumstances that the parties intended that the patentee surrender all of his substantial rights. And McCarthy and a case cited by SSI called Exxon Corp both say that when you have a transfer of all rights, that is an assignment, whereas a license to use a mark, quote, is a transfer of limited rights, less than the whole interest which might have been transferred. That said, let's look at page 697. Of the, is that the court's opinion, Your Honor? Yes, page 8 of the court's opinion. Yes, I have, Your Honor. The first full paragraph says, the court is satisfied under the terms of the parties' agreements SSI transferred all of its rights in the Pooh Works to Disney and may not now claim infringement of any retained rights. Correct. Isn't the court saying that the Schlesinger has retained rights, but it may not claim infringement on the basis of the rights that it has retained? I do not believe, with all due respect, that that is what the court is saying at all. That is inconsistent with the court's earlier statement that Schlesinger can't even point to any retained rights. What the court is simply saying there is that it has no rights and therefore can't claim infringement of any rights because it has none. That's how I believe that was intended to read. Thank you, Your Honor. I'm out of time, Your Honor. Thank you very much. Very quickly. There is no reference to standing in Judge Cooper's opinion. It just isn't there. The retained rights is the point that Judge Rayner mentioned. Even if the court had addressed the assignment license issue, it didn't have to in order to dispose of a counterclaim for infringement. That's the point. The standard actually is set forth in the Mother's Pizza case from 1983. What does it mean, necessary and essential? What it means is the issue had to have been decided apart from anything else in the case, and it's just not true here. It did not have to be decided to throw out this counterclaim. Once the counterclaim is thrown out on the merits because Disney is licensed, everything else falls by the wayside. Everything else the district judge said is in the alternative. And the fact that Judge Cooper, a district judge, highly respected, very experienced, she never mentioned the assignment and license issue, which was teed up and given prominence. It's not an accident that Judge Cooper left it out. She decided not to decide that issue because she didn't want to enter the thicket of the kinds of arguments on the merits that we've gone through here today, and therefore it was not necessary and essential to the decision she made in the district court. Thank you. Thank you, Mr. Zissou.